IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| MOHAMMAD MASSOUDNIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-4101-CV-C-NKL |
| | ) | |
| PRINCIPAL LIFE INSURANCE CO., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

The parties in this case have filed cross motions for summary judgment. Mohammad Massoudnia's ("Massoudnia") Motion for Summary Judgment is Doc. # 33. Principal Life Insurance Company's ("Principal") Motion for Summary Judgment is Doc. # 31. For the reasons set forth below, the Court denies both Motions.

**I.  Background**

   **A.  Massoudnia's Employment and Principal's Disability Plan**

Massoudnia was employed at Industrial Wire Products, Inc. ("IWP"), from February 1993 to September 18, 1997, the date of his termination. On December 10, 1997, IWP issued a service letter to Massoudnia outlining the bases for its termination of his employment. The letter indicated that Massoudnia was terminated

> because [IWP] had no employment contract with [him] and for numerous other reasons, including, but not limited to, interference with business relationships, [his] difficulty in working with other employees and/or agents of IWP, [his] poor morale, [his] approach to management, [his] negativism, [his] misuse of IWP's resources and property, the lack of respect [he] had

1

> from the IWP work force and [his] being an obstructionist and disruptive
> force to IWP's ongoing business and reputation.

A.R. at 2.[1]  Massoudnia subsequently filed suit against IWP alleging wrongful discharge and other claims.  His suit was unsuccessful.  A.R. at 246.

While he was employed at IWP, Massoudnia was covered by a disability policy issued by Principal.  Principal's disability insurance plan defines "disabled" as someone who is unable "to perform the majority of the material duties of his or her normal job."  A.R. at 502.  The primary monthly benefit for an executive is 60% of the employee's covered monthly earnings.  A.R. at 503.  Massoudnia was the plant manager for IWP and it appears the parties do not dispute that he was working in an executive function.  The policy also provides that when the employee's disability results from a mental disorder, the maximum payment period is two years.  A.R. at 518.

According to the Principal disability policy, the employee must submit proof of disability "within six months after the [employee] completes a Benefit Waiting Period.  Failure to provide proof within the time specified will not invalidate or reduce any claim if it was not reasonably possible to furnish proof within such time; provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the date proof is otherwise required."  A.R. at 520.

### B. Social Security Determination

Massoudnia filed for Social Security disability benefits in August 2001.  A.R. at

---

[1] The citation is to the Administrative Record.

35. Initially, the Social Security Administration ("SSA") found that Massoudnia was disabled and that his disability commenced on May 1, 2001. In a subsequent finding, the SSA found that Massoudnia's disability commenced on September 19, 1997. A.R. at 961-64. According to the SSA, Massoudnia's impairments were depressive disorder, coronary artery disease, non-insulin dependent diabetes, chronic obstructive lung disease, and obesity.

## II.     Discussion

Massoudnia was a successful executive for most of his career. After suffering a heart attack, related to stressful working conditions, Massoudnia developed depression. He was treated for that depression for more than a year before he was terminated and his termination was for conduct that is consistent with a finding of mental illness and specifically depression. Further, his treating physician found that Massoudnia was disabled at the time of his termination. In the words of the treating physician, "the proof is in the pudding." This is not exactly a scientific standard, but is one which comports with common sense. In addition, an Administrative Law Judge found that Massoudnia was unable to perform any gainful employment as of the date of his termination, a substantially higher threshold than is applicable to Principal's policy which only requires proof that Massoudnia was "unable to perform the majority of the material duties of his normal job."

On the other hand, the contemporaneous notes of Massoudnia's treating physician do not themselves reflect a disabling condition, and physicians who have either treated

Massoudnia since his termination or reviewed his medical records, have come to differing conclusions. Yet, all of these physicians are examining the substantially same record that is now before the Court.

Given the weight of the evidence in the record, the Court finds that Massoudnia has demonstrated that as of the date of his termination, he was disabled from performing the material duties of his job as a plant manager. His treating physician, who had the most experience with Massoudnia, and the only one with personal contact at the time in question, concluded that Massoudnia was disabled on that date. An ALJ determined that he could perform no job as of the date of his termination, much less the work of an executive. During most of his career, Massoudnia had been a successful executive, so the conduct identified in IWP's service letter is not evidence of a long standing character flaw or lack of interpersonal skills. Rather, the record establishes that Massoudnia became depressed after he had a heart attack related to stress. His physical and mental illness is well documented and he has continued to be unable to work in an executive capacity, or any other capacity, since his termination. In other words, this is not a case where there is some question about whether Massoudnia was disabled, but rather a question of when he was disabled. The Court finds that date is, at the latest, September 18, 1997; the point when his employer found that Massoudnia was no longer able to perform his duties as a plant manager.

While the Court finds that Massoudnia was disabled as of the date of his termination, it is clear that the disability was caused by his mental illness and not his

physical condition. For example, there is no objective evidence that Massoudnia would have had a second heart attack if he had continued to work. Massoudnia was able to physically function right up to the point of his termination. Furthermore, the service letter does not suggest that Massoudnia had any physical problems at work that led to his poor performance. Because Massoudnia's disability, for purposes of this case, is based on his mental condition, his benefits are limited to two years according to Principal's policy.

There remains the question of whether Massoudnia has shown as a matter of law that he had a valid excuse for failing to file his claim by the deadline established in Principal's policy. Under the disability policy, an employee must submit proof of disability "within six months after the [employee] completes a Benefit Waiting Period. Failure to provide proof within the time specified will not invalidate or reduce any claim if it was not reasonably possible to furnish proof within such time; provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the date proof is otherwise required." A.R. at 520.

According to Massoudnia's brief, his filing deadline was approximately March 18, 1998, but he did not file his claim with Principal until September 17, 2002. *See* Massoudnia's Motion [Doc. # 35] at p. 74. Massoudnia argues that his notice to Principal was provided "as soon as reasonably possible" because he was not aware that IWP had changed insurance plans. He also claims that he did not have the capacity to file his claim at an earlier date because of his mental impairments.

Also at issue is whether Principal suffered prejudice because of Massoudnia's

5

delay.  In *Weyrauch v. CIGNA Life Ins. Co.*, 416 F.3d 717 (8th Cir. 2005), the court held that federal courts look to state law to determine whether an insurance company must prove prejudice when an employee files an untimely claim.  *Id.* at n. 4 (citations omitted). Under Missouri law, an insurance company must prove prejudice that resulted from an insured's failure to comply with the notice deadlines in the policy and the company must have "sustain[ed] real, tangible harm as a result of its customer's failure to notify before that insurer is allowed to withhold its policy's benefits."  *Northwestern Ins. Co. v. Wilson*, 996 S.W.2d 531, 537 (Mo. Ct. App. 1999).  Principal states that it has suffered prejudice because of Massoudnia's untimely claim, but does not indicate what it would have done differently if the claim had been filed at an earlier date and how this would have affected its decision.

Given the dearth of cited evidence and argument surrounding whether Massoudnia's claim was submitted "as soon as reasonably possible" and whether Principal suffered prejudice, the Court cannot say as a matter of law that Massoudnia is entitled to judgment, because the timeliness of his application for benefits has not been established as a matter of law.  Nor can it grant Principal's Motion for Summary Judgment because the Court has found that Massoudnia was mentally disabled as of September 18, 1997.  Both motions are, therefore, denied.

### III.     Conclusion

Accordingly, it is hereby

(1)     ORDERED that Principal's Motion for Summary Judgment [Doc. # 31] is

6

DENIED; and

(2) ORDERED that Massoudnia's Motion for Summary Judgment [Doc. # 33] is DENIED.

It is further

ORDERED that a teleconference is scheduled in this case for Wednesday, May 24, 2006, at 9:00 A.M., to discuss how the case should proceed. The parties shall email my assistant, Fran Smith (Fran_Smith@mow.uscourts.gov), 24 hours in advance, to provide her with a number where they may be reached for the conference.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

DATE: May 19, 2006
Jefferson City, Missouri